Appeal number 23-1312 Good morning, Your Honors, and may it please the Court. This is an appeal in a case where the defendants argue that the court doesn't have jurisdiction, so that probably should be the first question we we get to. The district court refused to allow the case to proceed as a class action. The individual plaintiffs then resolved their individual claims. Mr. Scott accepted the offer of judgment which was drafted by the defendants to follow, carefully follow, the instructions this court has provided about how to appeal an adverse class ruling without going to trial, without allowing a settlement of the individual claims. The language that was in the book, Pastor v. State Farm and Espenshede, which is the cases which allow or recognize or set out the procedure that that we followed. The defendants argue that Espenshede is based on the theory that the named plaintiff may in the future be entitled to an incentive award and since Mr. Scott is locked up in a jail, he can't provide any assistance, it would never be entitled to an incentive award. The problem with that argument is that it's inconsistent with the record. So what exactly is the evidence that Mr. Scott is entitled to an incentive award? Because I got the jail issue, I understand that, I understand, but what evidence is there that he has some injury in fact that he actually did anything here to which would entitle him to an incentive award? Well, the defendants agreed in when they drafted the note of the offer of judgment that Mr. Bullock was entitled to seek an incentive award. Right, but they didn't, correct, they didn't agree though that he was entitled to an incentive award or that he did anything to earn an incentive award. In other words, I understand that argument, but the defendants cannot agree. I mean, if we allowed standing based upon the party's agreement that the Court of Appeals had standing, a lot of parties would agree that we have standing and seek an opinion from us instead of sending things back to the district. They happen all the time, I assume. The problem with that approach is that the court accepted exactly what we did here in Pastor and Espenshee. But you're talking about the district court, right? No, I'm talking about the Federal Court of Appeals. This court, in a case called Wright v. City of Calumet City, 848 F. 3rd 814, the court, in that case, the offer of judgment did not include this language. And the court said if you had included the language, we would have jurisdiction to decide the class case. You did not include the language and therefore we're dismissing the appeal. Can I also note that just as a matter of law, as I understand it, the class representative is assuming the risk of paying the defendant's costs for the litigation should the case be unsuccessful. So there is definitely a monetary stake on the table there. That's correct. And you also mentioned your brief, and I guess maybe you can give us whatever further information there may be, that as a matter of fact, Mr. Scott has devoted time with counsel related to this case. He has devoted time. It's often important for an attorney doing these kinds of cases or something that arises in the jail to talk to people who have experienced these problems. And Mr. Scott experienced these problems. He knows about them. He could tell me what it was like to be there and could help me develop the facts, which is what I did when we drafted the complaint and framed discovery. And there's nothing in Rule 23 that requires settlement proceeds to be distributed just on a strict pro rata basis. That's correct, Your Honor. And in fact you have cases that indicate otherwise. I mean this is an early stage, so I'm not sure this is the stage where you need proof, but I guess it's a question whether it's a matter of law with this cost point of view or a matter of counsel representations. There is some stake. It may not be huge as a personal stake, but there is some monetary stake he has. That's what the court has previously recognized, and I think there's no developed argument in this case to ask the court to depart from its precedent. Certainly the in-bank court could decide that the 11th Circuit of a divided panel of the 11th Circuit is correct, and there could never be incentive awards, but this is the wrong case to do that when that argument's made in a footnote. And you have the first, second, and ninth along with this court. That specifically rejected the 11th Circuit. I want to shift to this the issue of delays. When you proposed the oral surgeon but didn't receive treatment in 30 days, in the proposed questions, that time period wasn't there. It just says, you know, unreasonable delay. Why did you shift away from the 30 days? I was scared of the court's cases saying that it's not our job to legislate a time period. It's very scary when the court says that, and then we try to draft the class definition. Where there is delay, we know delay is about, is more, and the average more than 60 days, but then we run, if we say, well, it's more than 30 days, then we run into the problem of the court saying, well, it's not your job to let, it's not our job to legislate time periods, and it's per se an improper class. But we didn't get to the 30 days in the district court said, you don't have a common question. You don't have a common question because even though everybody in the proposed class has seen an oral surge, has seen a general dentist, and the general dentist has made a referral to an oral surgeon for specialized treatment, we have, you have to look at everybody's dental records to see whether they suffered by the alleged policy. What if the jail said, we're not going to provide any dental services, if other than extracting teeth. If you have a toothache, you have dental pain, you can see a dentist, and if it's legitimate pain, well, pull the tooth. The court would probably say that that doesn't meet standards of decency. It doesn't comply with the 14th Amendment. That's cruel and unusual, even if it was a prison policy. This is the same thing, just one step different. It's saying... But wouldn't that be, what if that was accurate with respect to some prisoners, that some prisoners, all they needed was extraction? How could we certify a class that says everybody who saw the dentist and was referred to an oral surgeon or needed to see an oral surgeon, their claims are the same? Well, they are the same. There's the general dentist that said, you need to see an oral surgeon. This is an extraction that is beyond the capabilities of a general dentist, and you're going to feel pain for the next 60 days. Maybe, maybe someone would feel pain for the next 60 days, maybe someone would feel pain for the next 60 minutes. Aren't you defining the court, aren't you defining this way too broadly? That's a question of evidence which we don't have here. People who get to see the dentist generally wait two weeks to see the dentist, so that they've already had pain for two weeks, and to think, engage in the magical thinking that the dentist looked in my mouth and my pain went away is inconsistent with reality. I want to explore just a little bit, maybe this is from a slightly different point of view. So your proposed class, and I understand, you know, it's sort of filtered by this initial call from the the variety of experiences after that. You know, some people, I'm not sure what the floor was, maybe you can tell me, you know, whether the person who had the fastest oral surgeon appointment was 30 days out, or two weeks out, or I think there's some evidence that maybe it went from 33 days up to nine months, or whatever, but did you ever consider subclasses or anything of that sort? No, we did not. The evidence about the 33 days came from the affidavit that was submitted after the close of discovery and the response to the class motion based on medical records that were never produced, that we don't look at, and it pains me to say this, but oftentimes the dentist who signed that affidavit gets things wrong, and I'm not going to accept whatever she says based on looking at exaggerates or looks at things in a biased manner, so we don't have that in the record. What we have in the record is that the average is more than 60 days, and I think the records were equally available to both parties, and nobody came up with showing that people went to the dentist in a reasonable period promptly after being referred. And can you say one word about another thing that concerned Judge Packold, which was that the underlying conditions were that somebody else has a rotten tooth and somebody else has wires in their mouth and so on. Is that relevant? It's not relevant because the general dentist said I can't handle this. You need to see a specialist, and it's not my job to say how long it takes. That's above my pay grade, and we know that the head of dental services at the jail said we desperately need an oral surgeon at the or some other number? We would accept one, which is what the head of dental services asked for in the budget. Let me ask you a different question. If a detainee was referred by the general dentist to an oral surgeon off-site and had to wait a long time to go see this oral surgeon, but they're reporting their pain as a one on a scale of one to ten, is that a constitutional violation? Nobody's ever reported that. Nobody's ever gone to a dentist. My pain is one. I want to see an oral surgeon. The dentist would say you don't need to see an oral surgeon. You have insignificant pain. When somebody has been seen and examined by the general dentist and they have a requires an oral surgeon, they have a serious medical need. What if taking away from dental services we have somebody with a knee injury and the prison doctor of a jail doctor says you need to see an orthopedic surgeon for your knee, and would we look carefully to look to see whether it could be solved with medication or required a knee replacement or required physical? How do we certify a class? That happens all the time, by the way, in prison. Someone gets hurt playing soccer. They hurt their knee. They come to the doctor. The doctor says you need to see an orthopedic surgeon. They may not see an orthopedic surgeon for six months, nine months. We see this all the time. Then the orthopedic surgeon says you actually need surgery to tear a ligament. Is that a class? Everybody that's referred to an orthopedic surgeon doesn't get to see one right away is subject to a class? Actually, the cases that I've read, it generally in the prison, it's Wexford's policy of requiring the collegial review. Once there's collegial review, they get to see the outside doctor immediately. What if the prison said we're not going to send anybody to see orthopedic surgeons. You're just going to tough it out. You're going to walk with a crutch. But nobody's saying the prison said that here, are they? Well, what if they said that? Would there be a class for that? Or would the court say you have to look at everybody? But that's not what's in front of us. Mr. Flexman, you're in your rebuttal time. I don't want to take it all up. If you want to reserve the rest. I'll be glad to ask some more questions and you can turn around your rebuttal. You can reserve. Yeah, thank you. Thank you. Okay, Ms. Hedera. May it please the court. This court should dismiss Mr. Scott's appeal for lack of Article 3 standing. However, if this court finds that Mr. Scott has standing, it should affirm the district court's decision denying his motion for class certification for two reasons. First, Mr. Scott waived Rule 23 B3's requirements of predominance and superiority at both the district court and appellate levels. Second, the district court did not abuse its discretion when it found that Mr. Scott failed to meet all four of the requirements under Rule 23. To prevail here today, Mr. Scott has to show that no reasonable person could agree with the district court's decision on all four of the elements. So, Ms. Hedera, let me begin with your standing argument based on this 1881 case which was decided long, long, long before there was such a thing as the 1966 version of Rule 23 that we now have. A great deal of your argument was discussing the right to attorney's fees in a common fund situation, which I found a poor analogy to what we have here. First of all, because this isn't a common fund situation, and secondly, because as it happens this is a 1983 case, so there is a right to attorney's fees under 1988. So, one of the big premises of your argument just doesn't apply here. And so, if the proposed named plaintiff, Mr. Scott, is out there incurring, you know, the liability for the costs of being the named plaintiff, cooperating with the attorney, then under 1988 principles I see no reason why there might not be some compensation for that. Your Honor, with respect to your question about assuming the risks of costs, standing must be for the relief sought. So, the relief sought here would just be the Now, you're obviously asking us to convene and bank and overrule a fairly lengthy line of cases, which is your privilege, but I don't find those cases unpersuasive because in the class context, the class representative is, in fact, getting perhaps more in the way of relief and also incurring more cost. And Rule 23, which allows district courts to evaluate proposed settlements and other kinds of relief, has been used across the country for exactly this sort of thing. So, just because the 11th Circuit woke up one day and decided that an 1881 case on a very different factual context ought to be extended here—actually, there's an 1885 case as well—it just doesn't strike me as very helpful. Since this isn't a common fund case, we have common fund cases under B-1, but this isn't a B-1 class. So, in terms of the attorney's fees and costs, which you've mentioned, looking at the rules themselves, Rule 23H permits attorney's fees and costs. And our issue is that— But this isn't an attorney's fees point about Mr. Scott. This is Mr. Scott incurring personal risk to move forward on this dental claim. And I believe Judge Kirsch was correct here. There's no evidence to support that Mr. Scott has services that he provided to the class in the record. It just needs allegations at this point, as well as as a matter of law, that he is, in fact, merely by being the named plaintiff. He is subject to a few things, subject to having a deposition taken, all kinds of things that you can't do with the unnamed members of the class, but you can do with the named member. Well, even assuming he has injury, in fact, he needs redressability, that this court has to provide—be able to provide a— And he easily has redressability, you know. He's—the class as a whole becomes the litigating party as soon as it's certified, so that's what he's trying to do. He's trying to get the class certified. Our law says that. County of Kane, for example. And once the class as a whole is certified, it can get its injury redressed by the appointment of an oral surgeon at the jail. That's what they're asking for. And I understand that you don't—you do not think that Greeno and Pettis are analogous, but the court— They're not. Well, this is not a common fund case. If it were a common fund case, it should have been certified under B-1. But Supreme Court's decisions in AMCM make that—you know, the Supreme Court has put some limits on common fund cases. And, you know, I understand that the First, Second, and Ninth Circuit have looked at circuit precedent as the reason why they're not going to find that incentive awards are impermissible. However, they did not consider the case Hall v. Hall, which is something that we mentioned in our brief, which explains how the rules operate. So the Supreme Court—these Greeno and Pettis cases are still controlling and— If it's a common fund, but this is just a different context. You probably know the history of the federal rules. Actually, the original Rule 23 was quite different from the present version. But we're dealing with a 23—1966 version of 23—B-3 class action. And I think—and that's not a common fund action. It's a common question of law or fact that meets the predominance and superiority requirements of B-3. And that, again, is your position, Your Honor. But, you know, the court in Johnson v. MPAS Solutions, you know, found that incentive awards may be—been given due to the product of inattention, right? So maybe courts and litigants—and that makes sense because if you look at how settlements are—class actions are typically resolved, it's your settlement, right? There's no evidence that this is inattention when it's a pretty grim view of courts, actually. Well, Hall v. Hall said that—and this is a 2018 Supreme Court case—that, you know, pre-existing practice—so what was happening between the 1880s to when Rule 23 was drafted—stands unless Rule 23 says something explicitly about that we're changing pre-existing practice. So the practice of we're not allowing personal expenses or personal expenses or a bounty to be given to a class representative—For common funds. That's what—that was the context. And it is our position that, you know, this would be a common fund type situation just like it was in Johnson. Right, and that's where I'm really contesting. There is no pre-existing common fund that amounted to a certain amount of money. You're sort of tossing this word common fund around as though it reaches, you know, the money to hire an oral surgeon at a jail. There's no—it's just not a common fund. Go look at the definition of common funds. This isn't it. It's not a bank account. It's not a stock account. It's not, you know, a limited payout from a tax. And again, it's our position that the common fund doctrine basically came out of Greenough and Pettus, right? They said that this common—It goes back even further than that. You can have Supreme Tribe of Ben-Hur against Caudill, which is actually a couple of decades before the cases you're relying on. But it was a different situation. Those were the proto-class actions that existed in the middle of the 19th century. Moving to the merits. Please, please, I would be happy for you to go to the merits. Can I ask you one question before I go to the merits? Would you concede that if the incentive award is permissible here that Mr. Scott has standing? Yes, Your Honor, but it's our position here that it is impermissible under these two Supreme Court cases, Greenough and Pettus. Let me focus you on the merits now that we are there. Couldn't the district court certify the class if the class were defined as those folks who were referred by the general dentist and had to wait for the oral surgeon for more than 30 days, which is, you know, the original class definition. 30 days or more for treatment by an oral surgeon. She could have, but looking at the common questions that Mr. Scott presented, both of them rely on this unreasonable delay. And he purposely didn't put in a time period, as he said in other oral arguments he's had before, because a time frame is usually the kiss of death in terms of common questions. He didn't do that in this case, but in order to determine whether or not there was an unreasonable delay, you have to look at things like pain level, what the issue was, and how long there was a delay. So just because a delay may be unreasonable for one detainee in this class, it might not have been unreasonable for another detainee. But, you know, let me comment on that one. It is not uncommon that a class will be defined, and then finally at the remedy stage where you might need somebody like a special master to distribute a damages award, some members of the class will not qualify. And so if there was somebody who really did, you know, have the equivalent of a hangnail, and for some reason was referred by the general dentist, then they just wouldn't get an award. And so, I mean, I think it would be even less desirable to have a class that said people who had to wait at least 30 days to be referred, and who had a pain level of 8 on a scale of 1 to 10. Now, that's a notoriously subjective scale. The doctors do rely on it, but I don't think that would give you any more certainty in your class action, even though looking at the record, there are people who are reporting agonizing pain in their grievances. You could say perhaps anyone who filed a grievance that reported severe pain after the general dentist referred. There are plenty of ways you could fine-tune this class definition without just saying, oh, nothing's common, you know, we're going to throw it out. And that's true, Your Honor, but that's not what we have here. Like, someone asked if there were subclasses here. Opposing counsel didn't ask for subclasses. And turning back to... Is there any reason on Judge Packold's commonality and typicality rationale that he would have done any better with subclasses? No, Your Honor. No, no. I mean, so it's a futile gesture. We don't ask people to do that. But turning to the standard here, it's abusive discretion. And, you know, it was a very well-reasoned, detailed, on-the-record opinion by Judge Packold on why, you know, Mr. Scott didn't meet all four of the requirements. She thought this was the same as McField's. And I think she's not 100% correct on that. And I'm sure she approached this in good faith. I assume that of everybody. But long doesn't necessarily mean well-reasoned. It is like McField's in the sense that McField's involved face-to-face evaluations that detainees said they wanted from a nurse. Right, but there was certainly no need for all of that. But these are people who've already been through the medical screening and who have not just their own word for it, but a professional who says they need more attention and more expert attention. And let me piggyback on that. You don't dispute that there is a defined set of skills that the general dentist has. It's a closed universe in the context of this jail. And then there are a defined set of skills that an oral surgeon has. And that's the reason for the referral, right? You're not disputing those basic facts, are you? That is correct. So if we have a class of people who've seen the general dentist and then who are referred, that means the general dentist couldn't help them anymore. And they necessarily need the skills of what the oral surgeon can do. That is correct, Your Honor. But again, I think Judge Peckold correctly saw that some of these detainees were going to get a wire of their braces off. Some of the detainees had a rotten tooth. And none of these detainees had emergency situations. I think that's important. Because if they did have an emergency situation, then there was a separate process that they would be sent to the oral surgeon on a more expedited basis. So how long are people supposed to be in pain? It's not an emergency. It's not going to kill you, but you have, you know, a rotten wisdom tooth and you can't sleep at night. Are you supposed to go like a week or a month? How long do you go? I don't have an answer in terms of a timeframe, but all these detainees had access to a dentist on site. So if they needed to go see the dentist again because they were in pain. But they've already been told by that dentist that I can't help you. Your problem is beyond my skill. Right, but they still had. So it's good that they just hear that repetitively? Well, the Constitution says that you have right to adequate dental services. It does not say that you have a right to an oral surgeon on site at the jail. And I think that's important because just because, you know, they had to wait, you know, all of us have to wait sometimes to see providers, but just because they had to wait does not mean that there was a constitutional violation. And to make it, to bring it back to the class, you know, Rule 23 requirements, to make this broad of a group, a class, was correct. She said this was not enough to satisfy all four of the requirements. So even if you say that these detainees all were subject to waiting to go see an oral surgeon, like this court has found in McField's and Phillips, this policy, this common policy, is only one small part of whether or not there was a constitutional violation under the 14th Amendment. And going back to predominance again, the common issues have to outweigh any individual ones. And Judge Packle correctly found that the individual issues here from all the detainees, so again, the varying pain levels, what they were going for, and how long they waited, was just too different. So does this court have any other questions? Nope. We ask that you affirm that this court's decision or alternatively dismiss Mr. Scott's appeal for lack of Article 3 standing. Thank you. Thank you, Mr. Davis. Yes, I have a question. How do you respond to the Appley's argument regarding waiver? Because do you agree, is it your position that you addressed all the four of the Rule 23b requirements in your brief? We've got 23a, all the four requirements, and we discussed 23b-3 with the appropriate specificity that's required for this kind of case. And no, we didn't waive anything. Just while I'm here, Phillips, in reference to Phillips, is interesting because in footnote 39 of Phillips, it cites a Ninth Circuit opinion which certified a class based on understaffing. And on remanded Phillips, that's what the district court did. She certified a class based on understaffing, and the ending date of that class was when there were enough dentists. And the questions about what the class definition should be bring to mind this court's decision in Fonder versus Kankakee, where the court held that the district judge has the authority, the power, and the duty to redefine the class if she or he doesn't like what the plaintiff proposed. Thank you, Mr. Flaxman. The case will be taken under advisement.